IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean L. Jenkins,                              :
                    Petitioner               :
                                             :
            v.                               :      No. 1352 C.D. 2017
                                             :      Argued: June 4, 2018
Unemployment Compensation Board              :
of Review,                                   :
                    Respondent               :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: October 30, 2018

            Sean Jenkins (Claimant) petitions for review of an adjudication of the

Unemployment Compensation Board of Review (Board) that dismissed his claim

for benefits under the Unemployment Compensation Law (Law).[1]  In doing so, the

Board affirmed the decision of the Referee that Claimant's appeal was untimely

under Section 501(e) of the Law, 43 P.S. §821(e).[2]  On appeal, Claimant argues that

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751 – 919.10.

[2] Section 501(e) of the Law provides:

> Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), *within fifteen calendar days after such notice* was delivered to him personally, or *was mailed to his last known post office address*, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(e) (emphasis added).

he should be permitted to appeal *nunc pro tunc* because his failure to appeal timely is attributable to non-negligent circumstances, *i.e.*, his stay at a drug treatment facility during the appeal period and an administrative breakdown in the unemployment compensation system caused by understaffing. We vacate and remand.

Claimant was employed full-time as a night crew clerk with Acme Markets (Employer) from November 2015 until March 20, 2017, when he was suspended for excessive absenteeism and tardiness.[3] On March 21, 2017, Claimant applied for unemployment compensation benefits. Four days later, on March 25, 2017, he entered the Livengrin Inpatient Residential Program for treatment of a substance abuse disorder, and he resided there until he completed treatment on April 22, 2017.

In the interim, the Unemployment Compensation (UC) Service Center determined that Claimant was ineligible for benefits under Section 402(e) of the Law, 43 P.S. §802(e).[4] On March 30, 2017, the UC Service Center mailed its notice of determination to Claimant's home address, advising him that his claim was denied and that the deadline to appeal was April 14, 2017. Claimant appealed by mail on April 25, 2017, three days after he was discharged from the treatment facility. The Referee held a hearing to determine whether he had jurisdiction over Claimant's untimely appeal and to receive testimony regarding Claimant's separation from employment.

---

[3] In a letter dated June 8, 2017, Employer informed Claimant that he was discharged effective May 23, 2017.

[4] Under Section 402(e), a claimant is ineligible for benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. §802(e).

Claimant testified that he was not aware of the notice of determination until he returned home from the treatment facility. He lives alone. He did not arrange to have his mail reviewed while he was in treatment. When asked by the Referee whether he was concerned about bills arriving in the mail, Claimant responded that he could not pay them; he planned to deal with everything upon his return home. When asked whether his active unemployment application warranted monitoring his mail, Claimant testified:

> I didn't know that … I was going to have to file an appeal. Any other time that I filed for Unemployment, I never had to go through this procedure, so I didn't know. If I would have known … I would have had someone monitor the mail, but I did not know.

Notes of Testimony, June 22, 2017, at 7-8.

Claimant testified that he attempted to contact the UC Service Center by phone from the treatment facility but got a busy signal every time. When asked whether he had internet access at the facility, Claimant responded that there was a computer available but he is not computer literate.

The Referee credited Claimant's testimony in its entirety. Nevertheless, the Referee dismissed his appeal as untimely under Section 501(e) of the Law, 43 P.S. §821(e). The Referee explained that Claimant "did not provide testimony or evidence as to why he did not have his mail forwarded to his location, or as to why he did not have his mail covered by anyone on his behalf." Referee Decision at 2. The Referee concluded that Claimant's failure to arrange for his mail during his absence did not excuse his untimely appeal. Claimant appealed to the Board, which affirmed on the basis of the Referee's findings and conclusions. Claimant now petitions for this Court's review.

3

On appeal,[5] Claimant argues that he should be allowed to file an appeal *nunc pro tunc*. Claimant asserts that his absence from his mailing address due to medical reasons combined with his numerous attempts to contact the UC Service Center show that he acted reasonably. Stated otherwise, his untimely appeal was not the result of his negligence.

An appeal *nunc pro tunc* is permitted when the appeal delay results from extraordinary circumstances involving fraud or some breakdown in the administrative process. *McClean v. Unemployment Compensation Board of Review*, 908 A.2d 956, 959 (Pa. Cmwlth. 2006). In *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979), this standard was relaxed somewhat. In that case, the appellant's attorney had his secretary prepare appeal papers for the appellant six days prior to the appeal deadline. The secretary was responsible for filing the appeal and ensuring that all secretarial work for the office was performed. The secretary fell ill and was out of the office for a week, during which time the appeal deadline passed. She filed the appeal within three days of her return to work. Our Supreme Court allowed the appeal to proceed *nunc pro tunc* because the delay was caused by the non-negligent act of a third party and was promptly corrected.

More recently, in *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996), our Supreme Court extended the *Bass* principles to allow a *nunc pro tunc* appeal where the non-negligent conduct was that of the appellant himself. There, the appellant, Willie Cook, planned to meet with an attorney to appeal the denial of his application for unemployment benefits. Two

---

[5] In reviewing a decision of the Board, this Court determines whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

days before the meeting, Cook suffered a cardiac event and was hospitalized for six days, the first three of which he was in intensive care. The appeal deadline passed the day before Cook was discharged. He filed his appeal three days later. The Board, in affirming the Referee, dismissed the appeal as untimely, noting that while Cook was hospitalized in regular care he was alert; able to read, write and receive visitors; and could have pursued his appeal. This Court affirmed, explaining that *Bass* authorized a *nunc pro tunc* appeal only where the delay is caused by a third party, not the appellant.

Our Supreme Court reversed and, in doing so, refined the *Bass* standard as follows:

> We believe a better statement of the rule in *Bass* is that where an appeal is not timely because of *non-negligent circumstances, either as they relate to appellant or his counsel*, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal nunc pro tunc.

*Id*. at 1131 (emphasis added). Because Cook's untimely appeal was caused by his "non-negligent" circumstances, the Supreme Court allowed his appeal to proceed *nunc pro tunc*. In so holding, the Court observed that there was no substantial evidence of record to support the Board's conclusion that Cook could have conducted his appeal from his hospital bed. The Court cited the seriousness of his cardiac issue, his inability to leave the hospital, and the fact that he did not have access to his notice of determination while hospitalized.

In the case *sub judice*, we must determine whether Claimant's absence from his mailing address during the appeal period was attributable to his own non-

5

negligent conduct, as opposed to that of a third party. The Board analogizes this case to prior cases holding that a claimant's failure to collect mail from his address of record does not justify a late appeal. *See, e.g.*, *Karmiev v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1060 C.D. 2016, filed March 24, 2017); *Plut v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2283 C.D. 2007, filed October 14, 2008); *Hanin v. Unemployment Compensation Board of Review*, 377 A.2d 1062 (Pa. Cmwlth. 1977).

We are not persuaded by the Board's reliance on the above cases. In each of those cases the claimant was absent from his mailing address for travel. The Court focused on what action, if any, the claimant took to ascertain the status of his claim while traveling. For example, in *Hanin*, the claimant testified that he did not know about the adverse determination sent to his Philadelphia address because he had been out of state for more than two months seeking employment. He argued that the Department of Labor and Industry should have known his whereabouts because he had sent it courtesy cards from cities he visited to keep his compensation claim open. In denying *nunc pro tunc* relief, this Court stated that "[a] claimant's out of state search for employment will not, *standing alone*, justify hearing of an untimely appeal." *Hanin*, 377 A.2d at 1064 (emphasis added). The Court emphasized that the claimant's courtesy cards specifically directed the Department to send notices pertaining to his claim to his Philadelphia address, suggesting that the claimant was responsible for the misdirection.[6]

---

[6] The two unpublished decisions cited by the Board are similar to *Hanin*. In *Plut*, the claimant, a Canadian citizen, was in Brazil seeking employment during the appeal period and did not arrange to have his mail forwarded from his mailing address in Ontario. He discovered the notice upon his return home, but waited an additional three weeks to appeal, which he attributed to confusion about his appeal rights. This Court held that the claimant's failure to collect mail from his address of record did not justify a late appeal, and his claim of confusion was contradicted by his own

6

We agree with Claimant that his case is in line with the paradigm established in *Cook*, 671 A.2d 1130, where a *nunc pro tunc* appeal was allowed because of the appellant's hospitalization for a serious medical condition. *See also B.B. v. Department of Public Welfare*, 118 A.3d 482 (Pa. Cmwlth. 2015).[7] The Referee credited Claimant's testimony in its entirety, including that he was admitted to the Livengrin Inpatient Residential Program during the appeal period and believed, based on prior experience, that there would be no problem with his unemployment application.

The Board asserts that every claimant has a duty to have his mail forwarded when he is absent for any reason and for any duration from the mailing address given to the Department. We reject the Board's assertion. Forwarding mail is a step undertaken when one leaves home for an extended period of time, not for a vacation or hospitalization. There is no evidence to support the Referee's statement that Claimant could have forwarded his mail to the Livengrin facility. There is no

---

testimony. Similarly, in *Karmiev*, the claimant testified that he did not appeal on time because he was working away from home and did not make arrangements for anyone to check his mail. This Court held that because the claimant had control over the circumstances that caused his appeal to be late, he failed to demonstrate the type of extraordinary circumstances that warrant *nunc pro tunc* relief.

Both *Plut* and *Karmiev* involved claimants who failed to take any reasonable measures to ensure they were aware of the status of their unemployment claims while they were away from home. By contrast, as discussed above, Claimant's absence from his mailing address was more akin to a medical emergency, and he did, in fact, attempt to contact the UC Service Center, albeit unsuccessfully.

[7] In *B.B.*, 118 A.3d 482, counsel mailed an appeal of an indicated report of child abuse on November 21, 2013, which was three days late. Counsel testified that he filed the appeal late because he had emergency eye surgery, had to hang his head upside down for 40 minutes of every hour after the surgery, and did not return to work until the week of November 18, 2013. This Court held that the petitioner should have been allowed to appeal *nunc pro tunc* because counsel's testimony was unchallenged and "was sufficient to raise the inference that he was unable to perfect [the] appeal due to non-negligent circumstances." *Id*. at 486.

evidence to show that the U.S. Postal Service would have agreed to do so or even that the forwarding would not, in itself, cause a delay. Nor is there any evidence that the Livengrin facility, in turn, would distribute forwarded mail to patients. The Board simply made unfounded assumptions that Claimant could have forwarded his mail to Livengrin. In *Cook*, 671 A.2d 1130, the Supreme Court held that the Board erred in assuming that Cook could have conducted his appeal from his hospital bed because there was no evidence to support this assumption. Likewise, here, the Board has erred in its assumption that Claimant's appeal could have been timely had he taken steps to have his mail forwarded to Livengrin.

Claimant's case is distinguishable from the cases cited by the Board for an additional reason. Claimant testified credibly that he attempted to contact the UC Service Center by phone but always got a busy signal.[8] Claimant points out that his appeal period coincided with the height of a funding crisis at the Department of Labor and Industry that resulted in substantial staff reductions beginning in December 2016. Claimant's credited testimony that he tried unsuccessfully to contact the UC Service Center by phone weighs in favor of granting *nunc pro tunc* relief since it is evidence that Claimant acted reasonably to learn the status of his application but was unsuccessful due to no fault of his own.

In summary, Claimant's absence from his mailing address during the appeal period was attributable to non-negligent conduct, *i.e.*, his admission to an

---

[8] The Board argues that Claimant waived the issue of his unsuccessful attempts to contact the Service Center because he did not raise it in his appeal to the Board. The Board also argues that Claimant's inability to speak with a Department representative is not what caused his appeal to be late; it was his negligence in not arranging for someone to check his mail. We reject the Board's waiver argument. The issue before the Referee and the Board was the timeliness of Claimant's appeal. Claimant's inability to phone the Service Center is an argument in support of his position that his late appeal should be excused. Issues are waived; arguments are not.

8

inpatient drug treatment facility. We hold that the Board erred in denying Claimant's request to appeal *nunc pro tunc*. Accordingly, we vacate the Board's adjudication and remand this matter for further proceedings on Claimant's application for benefits.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean L. Jenkins,                          :
                    Petitioner            :
                                          :
          v.                              :     No. 1352 C.D. 2017
                                          :
Unemployment Compensation Board           :
of Review,                                :
                    Respondent            :

# **O R D E R**

AND NOW, this 30th day of October, 2018, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated July 31, 2017, is VACATED, and the matter is REMANDED for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.


                              _____
                              MARY HANNAH LEAVITT, President Judge